IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jason Robert Stover,                           :
                Petitioner                  :
                                                 :
                v.                          :  No. 311 M.D. 2015
                                               :  Submitted: April 8, 2016
Progress Community Corrections         :
Center, Waynesburg, PA,                    :
                Respondent                :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                   HONORABLE PATRICIA A. McCULLOUGH, Judge
                   HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT                    FILED: June 8, 2016

Jason Robert Stover, *pro se*, has filed a mandamus action against the Progress Community Corrections Center (Corrections Center) to compel it to update and expand its law library. The Department of Corrections has responded with preliminary objections challenging this Court's jurisdiction and, alternatively, asserting that the mandamus action fails to state a valid cause of action. We overrule in part and sustain in part the Department's objections and dismiss Stover's petition.

In his June 8, 2015, petition, Stover alleges that he is an inmate at Corrections Center, which he describes as a secure parole violator center located in Waynesburg, Pennsylvania. Stover alleges that the law library at Corrections Center consists of "a small collection of outdated law books … a one year collection (2010) of Federal Supplements and a highly limited ar[r]angement of random state law books, a great deal of which are 5 or more years out of date." Petition, ¶ 4. Stover also alleges that he is not permitted to make photocopies at

the library; there is only one typewriter in the library; the library does not employ a full-time paralegal; and he is prohibited from traveling to a site with more resources. Petition, ¶¶ 5-7.

Stover claims he "has pending court actions and has suffered los[s]es in court due to a lack of legal resources." Petition, ¶ 9. He claims "he lost two court cases, CP 30 MD 38-2015 and CP 30 MD 37-2015, in Greene County Court of Common Pleas because [Corrections Center] does not have a legitimate law library." Petition, ¶ 11. He requests this Court to order Corrections Center to "provide a more up-to-date law library with more resources and the ability to research adequate case law and statutes, and rules of court." Petition, ¶ 12.

The Department has filed preliminary objections. First, it objects to this Court's jurisdiction over Stover's petition because Corrections Center is not part of the Commonwealth government. Second, the Department demurs to Stover's petition, asserting that it does not state a legal claim upon which relief may be granted.

We begin with a review of the law. The common law writ of mandamus lies to compel the performance of a ministerial act or mandatory duty. *Chesapeake Appalachia, LLC v. Golden*, 35 A.3d 1277, 1280 n.7 (Pa. Cmwlth. 2012). "The burden of proof falls upon the party seeking this extraordinary remedy to establish his legal right to such relief." *Werner v. Zazyczny*, 681 A.2d 1331, 1335 (Pa. 1996). Mandamus requires a clear legal right to relief in the petitioner, a corresponding duty in the respondent and the lack of any other adequate and appropriate remedy. *Wilson v. Pennsylvania Board of Probation and Parole*, 942 A.2d 270, 272 (Pa. Cmwlth. 2008). Mandamus is not available to establish legal rights but only to enforce rights that have been established. *Id.* As

2

a high prerogative writ, mandamus is rarely issued and never to interfere with a public official's exercise of discretion. *Chadwick v. Dauphin County Office of Coroner*, 905 A.2d 600, 603 (Pa. Cmwlth. 2006). Mandamus relief has been summarized as follows:

> In short, mandamus is chiefly employed to compel the performance (when refused) of a ministerial duty, or to compel action (when refused) in matters involving judgment and discretion. It is not used to direct the exercise of judgment or discretion in a particular way, nor to direct the retraction or reversal of an action already taken.

*Seeton v. Adams*, 50 A.3d 268, 277 (Pa. Cmwlth. 2012) (quoting *Pennsylvania Dental Association v. Insurance Department*, 516 A.2d 647, 652 (Pa. 1986) (internal citations and emphasis omitted)).

In considering preliminary objections, this Court will treat all the well-pleaded material facts set forth in the petition as true and make all reasonable inferences that may be drawn from those facts. *Werner*, 681 A.2d at 1335. We need not accept as true conclusions of law, unwarranted inferences, argumentative allegations, or expressions of opinion. *Myers v. Ridge*, 712 A.2d 791, 794 (Pa. Cmwlth. 1998). The test is whether it is clear from all of the facts pleaded that the pleader will be unable to prove facts legally sufficient to establish his right to relief. *Armstrong County Memorial Hospital v. Department of Public Welfare*, 67 A.3d 160, 170 (Pa. Cmwlth. 2013). A demurrer will be sustained only where it is clear that a pleading does not state a legal claim. *Id.*

In its first issue, the Department contends that this Court lacks jurisdiction because Corrections Center is not a Commonwealth agency, department, or official with statewide policy-making functions. Section 761(a)(1) of the Judicial Code limits this Court's original jurisdiction to actions "[a]gainst

3

the Commonwealth government, including any officer thereof, acting in his official capacity ….'' 42 Pa. C.S. §761(a)(1).[1] Stover responds that because Corrections

---

[1] Section 761 establishes:

> (a) General Rule.--The Commonwealth Court shall have original jurisdiction of all civil actions or proceedings:
>
>> (1) Against the Commonwealth government, including any officer thereof, acting in his official capacity, except:
>>
>>> (i) actions or proceedings in the nature of applications for a writ of habeas corpus or post-conviction relief not ancillary to proceedings within the appellate jurisdiction of the court;
>>>
>>> (ii) eminent domain proceedings;
>>>
>>> (iii) actions or proceedings conducted pursuant to Chapter 85 (relating to matters affecting government units);
>>>
>>> (iv) actions or proceedings conducted pursuant to the act of May 20, 1937 (P.L. 728, No. 193), referred to as the Board of Claims Act; and
>>>
>>> (v) actions or proceedings in the nature of trespass as to which the Commonwealth government formerly enjoyed sovereign or other immunity and actions or proceedings in the nature of assumpsit relating to such actions or proceedings in the nature of trespass.
>>
>> (2) By the Commonwealth government, including any officer thereof, acting in his official capacity, except eminent domain proceedings.
>>
>> (3) Arising under Article V of the act of May 17, 1921 (P.L. 789, No. 285), known as "The Insurance Department Act of 1921."
>>
>> (4) Original jurisdiction of which is vested in the Commonwealth Court by any statute hereafter enacted.
>
> (b) Concurrent and exclusive jurisdiction.--The jurisdiction of the Commonwealth Court under subsection (a) shall be exclusive except as provided in section 721 (relating to original jurisdiction) and except with respect to actions or proceedings by the Commonwealth government, including any officer thereof, acting in his official capacity, where the jurisdiction of the court shall be concurrent with the several courts of common pleas.

**(Footnote continued on the next page . . . )**

Center is operated and controlled by the Department, it is a part of state government and, thus, this Court has jurisdiction over his petition. We agree.

Section 4103 of the Prisons and Parole Code defines a "[c]ommunity corrections center" as "[a] residential program that is *supervised and operated* by the Department of Corrections in accordance with Chapter 50 (relating to community corrections centers and community corrections facilities)." 61 Pa. C.S. §4103 (emphasis added). The Department is permitted to "[e]stablish community corrections centers at locations throughout this Commonwealth approved by the Governor." 61 Pa. C.S. §5002(1). The chair of the Pennsylvania Board of Probation and Parole has the authority to:

> (1) Designate community corrections centers or community corrections facilities where parolees are to be housed.
>
> (2) Determine whether parolees are to be housed in a secured or unsecured portion of a community corrections center or community corrections facility.
>
> (3) Determine, jointly with the Secretary of the Department of Corrections, using evidence-based practices designed to reduce the likelihood of recidivism and improve public safety, the appropriate treatment and programming for parolees who are

---

**(continued . . . )**

> (c) Ancillary matters.**--**The Commonwealth Court shall have original jurisdiction in cases of mandamus and prohibition to courts of inferior jurisdiction and other government units where such relief is ancillary to matters within its appellate jurisdiction, and it, or any judge thereof, shall have full power and authority when and as often as there may be occasion, to issue writs of habeas corpus under like conditions returnable to the said court. To the extent prescribed by general rule the Commonwealth Court shall have ancillary jurisdiction over any claim or other matter which is related to a claim or other matter otherwise within its exclusive original jurisdiction.

42 Pa. C.S. §761.

5

housed at community corrections centers and community corrections facilities.

(4) Audit, jointly with the secretary, the performance of treatment and services provided by community corrections centers and community corrections facilities.

61 Pa. C.S. §5005.

The Department's website states that its Bureau of Community Corrections operates "13 state community corrections centers" including "Progress [Corrections Center] (on the grounds of SCI Greene)."[2] Section 2(B) of the Department's Policy Statement 8.1.1 on Community Corrections Centers sets forth the procedures for filling vacant staff positions at a community corrections center. Policy Number 8.1.1, Section 2(B) at 2-2. Specifically, it states that the Bureau of Community Corrections

> is governed by the Commonwealth of Pennsylvania Personnel Policies, Procedures, Collective Bargaining Agreements, Civil Service Rules and Regulations administered by the Department's Bureau of Human Resources (BHR), Manpower Management and Personnel Services Division.

*Id.*

The Department offers only a conclusory argument that the named defendant, Corrections Center, is not part of state government. It does not explain why its control, as set forth above, does not make Corrections Center a state actor. We reject the Department's objection to jurisdiction.

---

[2] http://www.cor.pa.gov/Facilities/CommunityCorrections/Pages/What-is-Community-corrections.aspx (last viewed May 11, 2016).

In its second issue, the Department contends that Stover's petition does not state a legal claim. To establish a cognizable claim of lack of access to the courts, the claimant must aver an actual injury. The Department asserts that Stover's petition lacks such factual allegations. Although the petition alleges that Stover has pending court cases and has suffered two prior losses in court, it does not allege facts to show a causal relationship between insufficient library resources and Stover's inability to litigate his prior and pending cases. Stover responds that he has established an actual injury because the two cases listed in the petition show he "was unable to argue proper case law or mount [an] appeal after the fact." Stover's Brief at 4.[3]

The constitutional right of access to the courts has been firmly established. *Bounds v. Smith*, 430 U.S. 817, 821 (1977).[4] In *Bounds*, the United States Supreme Court held that the states have an affirmative duty to assure prisoners access to the courts that is "adequate, effective, and meaningful." *Id.* at 822. The Supreme Court further explained that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 828.

---

[3] This sentence constitutes Stover's entire discussion of the prior cases.

[4] In *Bounds*, 430 U.S. 817, the right of access to the courts was grounded in the Fourteenth Amendment to the United States Constitution. It provides, in relevant part:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. CONST. amend. XIV, § 1.

Notably, both parties cite *Lewis v. Casey*, 518 U.S. 343 (1996). Therein, 22 inmates incarcerated by the Arizona Department of Corrections claimed their constitutional right to access to the courts was violated because of an inadequate prison library, with undertrained staff and outdated legal materials. Illiterate and non-English-speaking inmates did not receive adequate assistance and inmates segregated for disciplinary or security reasons were completely denied access to the library. The United States District Court for the District of Arizona ordered extensive changes to the prison's law library and legal assistance program. The Court of Appeals for the Ninth Circuit affirmed the injunction. The Supreme Court granted *certiorari*.

In evaluating the inmates' action, the Supreme Court explained that *Bounds* did not establish "an abstract, freestanding right to a law library or legal assistance…." *Id.* at 351. To establish a constitutional violation, an inmate "must show actual injury." *Id.* at 349. "[A]n inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Id.* at 351. Instead,

> the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim. He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint.

*Id.* Moreover, the right of access to the courts

> does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything

8

from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Id*. at 355 (emphasis in original).

The inmate plaintiffs in *Lewis* included only two that had suffered an actual injury. Both were illiterate but had not been given assistance. One inmate's lawsuit was dismissed with prejudice, and the other inmate was unable even to file a complaint. The Supreme Court concluded that these two instances of harm did not warrant a system-wide change of the law library. The Supreme Court reversed and remanded for the District Court to tailor its injunction to the two instances of actual harm.

The Department also directs our attention to *Christopher v. Harbury*, 536 U.S. 403 (2002), where the Supreme Court stated that "[w]hether an access claim turns on a litigating opportunity yet to be gained or an opportunity already lost, the very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong." *Id*. at 414-15. "It follows that the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Id*. at 415. Specifically, a plaintiff must show (1) that he suffered an actual injury - that he lost a chance to pursue a "nonfrivolous" or "'arguable' underlying claim" and (2) that he has no remedy other than in the present denial of access suit. *Id*.

9

Because *Lewis* established that losing a court case constitutes an "actual injury," Stover argues that his petition states a claim. The Department counters that *Lewis* requires Stover to plead facts in support of his claim of actual injury and that *Christopher* requires him to show that his pending or prior cases were nonfrivolous. Stover has met neither requirement.

We agree with the Department. Stover's mandamus action alleges that he lost two court cases and has actions pending. Petition, ¶¶ 9, 11. The petition offers no information about the cases, *i.e.*, that they were or are "nonfrivolous" or "arguable." *Christopher*, 536 U.S. at 415. The subject of the cases is unknown. They may or may not relate to the conditions of Stover's confinement or his sentence. They may be personal claims. Corrections Center is not required to provide resources necessary to pursue every type of legal action. *Lewis*, 518 U.S. at 355. Finally, Stover's petition does not plead facts sufficient to permit the inference that inadequate legal resources contributed to the dismissal of the two prior cases. In sum, Stover's petition does not aver facts showing that his court cases were not frivolous; involved his sentence or prison conditions; and were adversely affected by a lack of legal resources. As such, the petition does not state a cause of action upon which relief can be granted.

For the reasons set forth above, the Department's preliminary objection to jurisdiction is overruled and its preliminary objection in the nature of a demurrer is sustained. Accordingly, Stover's petition for a writ of mandamus is dismissed.

_____
MARY HANNAH LEAVITT, President Judge

10

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jason Robert Stover,                          :
                    Petitioner                :
                                              :
          v.                                  :   No. 311 M.D. 2015
                                              :
Progress Community Corrections               :
Center, Waynesburg, PA,                       :
                    Respondent                :

# **O R D E R**

AND NOW, this 8th day of June, 2016, the preliminary objections filed by the Department of Corrections are OVERRULED as to this Court's jurisdiction and SUSTAINED for failure of Petitioner Jason Robert Stover to state a valid cause of action. Petitioner's petition for a writ of mandamus is DISMISSED.

_____
MARY HANNAH LEAVITT, President Judge