# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Elemental Health Group, LLC,  :
                             Petitioner  :
                                               :
        v.  :   No. 3 M.D. 2018
                                               :   Argued: June 7, 2018
Department of Health and Terrapin  :
Investment Fund 1, LLC,  :
                        Respondents  :

BEFORE:  HONORABLE P. KEVIN BROBSON, Judge
             HONORABLE MICHAEL H. WOJCIK, Judge
             HONORABLE JAMES GARDNER COLINS, Senior Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**         **FILED: June 29, 2018**

Before this Court are the preliminary objections filed separately by the Commonwealth of Pennsylvania, Department of Health (Department) and Terrapin Investment Fund 1, LLC (Terrapin) (collectively, Respondents) to a Petition for Review in the Nature of a Complaint in Equity Seeking Mandamus or Declaratory Relief (Petition) filed by Elemental Health Group, LLC (Elemental) in this Court's original jurisdiction, and Elemental's preliminary objection to the Department's preliminary objections. Respondents contend that Elemental failed to exhaust administrative remedies prior to initiating the instant action, thereby divesting this

Court of jurisdiction over the matter.[1]  Upon review, we sustain, in part, the Department's preliminary objections, sustain Terrapin's preliminary objection, dismiss as moot Elemental's preliminary objection, and dismiss Elemental's Petition.

As background, the General Assembly enacted the Pennsylvania Medical Marijuana Act (Act),[2] which took effect on May 17, 2016, to establish a framework for the legalization of medical marijuana in the Commonwealth for certain medical conditions.  The Act identified the Department as the Commonwealth agency responsible for administering the Act and authorized the Department to promulgate regulations, including temporary regulations, necessary to carry out the Act.  *See* Section 301 of the Act, 35 P.S. § 10231.301; Section 1107 of the Act, 35 P.S. § 10231.1107.  Pursuant to this authority, the Department promulgated temporary regulations.  *See* 28 Pa. Code §§ 1131.1-1191.33.

The Act vests authority in the Department to issue permits "to medical marijuana organizations to authorize them to grow, process or dispense medical marijuana."  35 P.S. § 10231.301(a)(1).  The Act recognizes two types of medical marijuana organizations to which the Department may issue permits:  (1) grower/processors, which would be permitted to grow and process medical marijuana; and (2) dispensaries, which would be permitted to dispense medical marijuana products.  *See* Section 601 of the Act, 35 P.S. § 10231.601; 28 Pa. Code § 1141.21.  The Department established six medical marijuana regions to which it would assign permits.  *See* Section 603(d) of the Act, 35 P.S. § 10231.603(d); 28 Pa. Code § 1141.24(a).  Between February 20, 2017, and

---

[1] The Department further objected on other grounds that will be discussed later in this opinion.

[2] Act of April 17, 2017, P.L. 84, 35 P.S. §§ 10231.101-.2110.

2

March 20, 2017, the Department accepted applications from entities interested in obtaining a limited number of permits. During the application period, the Department received 457 applications—177 for growers/processors and 280 for dispensaries. The Act and the temporary regulations promulgated by the Department govern the application review. 35 P.S. § 10231.603(a.1); 28 Pa. Code §§ 1141.27-.34.

The application for a grower/processor permit was comprised of six parts, labeled A through F.[3] Each part contained multiple questions, with some questions requiring a yes/no answer and others requiring a narrative response. Further, the Department required applicants to submit twelve attachments, labeled A through L. The Department scored applications based upon the responses therein, with each application receiving a score based upon a maximum of 1,000 total points. Should the Department decline to award a permit, the applicant may appeal. The Department's temporary regulations, the Administrative Agency Law,[4] and the General Rules of Administrative Practice and Procedure (GRAPP)[5] establish remedies to challenge administrative actions taken by the Department, including permit denials.

Elemental submitted an application for a grower/processor permit in Region 4.[6] The Department denied Elemental's application. The Department sent Elemental a denial notice, wherein the Department notified Elemental that it did not

---

[3] The application can be found at https://www.pa.gov/guides/pennsylvania-medical-marijuana-program/#GrowersandProcessors (last accessed June 11, 2018).

[4] 2 Pa. C.S. §§ 501-508.

[5] 1 Pa. Code §§ 31.1-35.251.

[6] Region 4 is comprised of the following counties: Bradford, Centre, Clinton, Columbia, Lycoming, Montour, Northumberland, Potter, Snyder, Sullivan, Tioga, and Union. 28 Pa. Code § 1141.24(a)(4).

receive a permit because its application score was not among the top two scores for Region 4. (Pet., Exhibit D.) In Region 4, the Department awarded grower/processor permits to the recipients of the two highest application scores—GTI Pennsylvania, LLC and Terrapin. Elemental finished third. The denial notice further provided that Elemental could file an appeal wherein Elemental must respond to the Department's reason for denying Elemental's application. (*Id.*)

On June 30, 2017, Elemental filed a Notice of Appeal pursuant to 1 Pa. Code § 35.20, challenging the Department's denial, claiming that Terrapin's application contained a false statement and that the Department erroneously awarded points to Terrapin's application based upon this false statement. (Pet., Exhibit E.) Elemental argued that, but for this erroneous award of points, Elemental would have been one of the top two scorers in Region 4. (*Id.*)

Thereafter, in September 2017, Elemental proceeded to initiate three more pieces of litigation. First, on September 11, 2017, Elemental filed a Formal Complaint with the Department pursuant to 1 Pa. Code § 35.9, claiming that Terrapin violated the Act by making false statements in an effort to achieve a higher application score. (Pet., Exhibit G.) Second, also on September 11, 2017, Elemental filed with the Department pursuant to 1 Pa. Code § 35.19 a Petition for Declaratory Order, seeking the Department to declare Elemental as one of the top two scorers for Region 4, thus awarding it a grower/processor permit. (Pet., Exhibit H.) Third, on September 14, 2017, Elemental filed with the Department pursuant to 1 Pa. Code § 35.23 a Formal Protest of the Department's approval of Terrapin's permit. (Pet., Exhibit I.) This Protest, similar to the documents Elemental submitted prior, argued that Terrapin made false statements in its permit application and that the

4

Department awarded points to Terrapin's application because of this misstatement. (*Id.*)

Notwithstanding the pendency of these actions, on January 5, 2018, Elemental filed the Petition in this Court's original jurisdiction. The Petition raises two separate due process violations. First, Elemental asserts that the Department is not affording Elemental an adequate administrative appeal process that can afford complete relief. (Pet. at ¶¶ 86-87.) Second, Elemental asserts that the Department scored the applications inconsistently and arbitrarily and that the secrecy surrounding the scoring process deprives Elemental of a fair opportunity to receive a permit. (Pet. at ¶¶ 88-90.) The Petition seeks mandamus relief in the form of this Court ordering the Department to award Elemental a grower/processor permit for Region 4. Alternatively, Elemental seeks declaratory relief in the form of this Court declaring that (1) all matters and all claims be before the hearing officer, with the hearing officer directed to adjudicate them all and award such relief as is proper, (2) Elemental be granted the right to depositions and subpoenas, as well as presenting such evidence at the hearing, and (3) any other proper relief. (Pet. at ¶ 125.)

In support of its claim that the Department is not affording Elemental an adequate administrative appeal process, Elemental claims that the Department wrongfully constrained the choice of hearing officers and the scope of their authority in such a way that deprives Elemental of a meaningful administrative appeal process capable of affording complete relief. (Pet. at ¶ 82.) In support thereof, Elemental avers the following. After Elemental filed its Formal Protest, the hearing officer issued a standing practice order outlining the duties and powers of the hearing officer. (Pet., Exhibit K.) The standing practice order also articulated what items

the parties are obligated to include in their pre-hearing conference memoranda, in addition to providing that parties are expected to exchange copies of all exhibits that they propose to offer into evidence prior to the hearing. (*Id.*) Elemental takes issue with this procedure, as the standing practice order advised that GRAPP does not provide for discovery, thereby precluding Elemental from subpoenaing necessary documents to prove that it achieved one of the top two scores in Region 4. (Pet. at ¶¶ 50-53.) Elemental also alleges that the hearing officer informed Elemental that the content of its hearing would be limited to *only* Elemental's application and that the hearing officer could not recommend a rescoring of Terrapin's application or recommend that the Department grant Elemental a permit. (Pet. at ¶¶ 57, 62-63.) This restriction, as argued by Elemental, effectively serves to truncate Elemental's opportunity to receive adequate relief, as Elemental is precluded from presenting the thrust of its argument—Terrapin made a misstatement on its application, the Department awarded points for this misstatement, and, but for this misstatement, Elemental would have been awarded a permit for achieving one of the top two scores in Region 4. (Pet. at ¶¶ 58, 65.) Elemental contends that the hearing officer should have the authority to determine whether Elemental achieved one of the top two scores for Region 4, which thereby necessitates the introduction of evidence regarding other entities' applications. (Pet. at ¶ 85.) The limited scope of the hearing, however, frustrates both Elemental's opportunity to present its case and the hearing officer's ability to determine the question at issue. (*Id.*)

In support of its allegation that the Department is scoring the applications inconsistently and arbitrarily, Elemental references the alleged misstatement on Terrapin's application. Specifically, the application includes a question regarding whether the applicant intends on siting a facility in a "financially

6

distressed municipality" pursuant to the Municipalities Financial Recovery Act (Act 47).[7] The Department represented that an affirmative response to this question would positively affect an applicant's score. (Pet. at ¶ 12.) While Terrapin's application represented that it would be siting a facility in a financially distressed municipality, the location in which Terrapin sought to place a facility is not a financially distressed municipality under Act 47. (Pet. at ¶ 32.) Elemental alleges that the Department awarded points to Terrapin's application for being located in a financially distressed municipality notwithstanding this misrepresentation. (*Id.*) Elemental avers that the Department has an obligation to ensure that those that receive permits are of good character and fit to hold permits, and that the Department subverted this duty by failing to gather the necessary information to determine applicants' character and fitness. (Pet. at ¶¶ 72, 74.) Elemental alleges that Terrapin's misstatement is in violation of 18 Pa. C.S. § 4904, relating to unsworn falsifications to authorities, and the Department failed to make a necessary determination regarding Terrapin's character, fitness, and suitability for a grower/processor permit in light of this misstatement. (Pet. at ¶ 76.)

Further, although the Act provides unsuccessful applicants the opportunity for post-award debriefings, Elemental alleges that, at its debriefing, it learned that the application scoring was more specific than described in the application itself. (Pet. at ¶ 94.) Specifically, Elemental learned that the Department used previously-unmentioned criteria to score the applications. (Pet. at ¶ 96.)

The Department and Terrapin responded by filing separate preliminary objections in the nature of a demurrer. The Department objected on three grounds. First, the Department demurred that Elemental failed to file its Petition within the

---

[7] Act of July 10, 1987, P.L. 246, *as amended*, 53 P.S. §§ 11701.101-.712.

7

applicable six-month statute of limitations. *See* 42 Pa. C.S. § 5522(b)(1). Second, the Department demurred to Elemental's use of a mandamus action, arguing that mandamus is only proper for the compulsion of *mandatory* actions, whereas the Department's award of permits is discretionary. Third, the Department alleged that Elemental failed to exhaust administrative remedies, thereby divesting this Court of jurisdiction. Terrapin, akin to the Department, demurred on the ground that Elemental failed to exhaust administrative remedies prior to filing its Petition.

Elemental responded to Respondents' preliminary objections. Regarding the objection to exhaustion of administrative remedies, Elemental argued that the doctrine does not apply where the administrative remedy is incomplete, and such is the case here. Further, Elemental filed a preliminary objection to the Department's objection regarding the applicable statute of limitations, arguing that an objection based on statute of limitations must be raised in an answer and new matter, as opposed to a preliminary objection.

After briefing and oral argument, the parties' preliminary objections and Elemental's Petition are ready for disposition. For the purposes of efficiency, and because we dispose of the Petition on these grounds, we will evaluate Terrapin's and the Department's objections alleging a failure to exhaust administrative remedies together.

In ruling on preliminary objections, we accept as true all well-pleaded material allegations in the petition for review and any reasonable inferences that we may draw from the averments. *Meier v. Maleski*, 648 A.2d 595, 600 (Pa. Cmwlth. 1994). The Court, however, is not bound by legal conclusions, unwarranted inferences from facts, argumentative allegations, or expressions of opinion encompassed in the petition for review. *Id.* We may sustain preliminary

8

objections only when the law makes clear that the petitioner cannot succeed on the claim, and we must resolve any doubt in favor of the petitioner. *Id.* "We review preliminary objections in the nature of a demurrer under the above guidelines and may sustain a demurrer only when a petitioner has failed to state a claim for which relief may be granted." *Armstrong Cty. Mem'l Hosp. v. Dep't of Pub. Welfare*, 67 A.3d 160, 170 (Pa. Cmwlth. 2013).

Respondents contend that Elemental failed to exhaust its administrative remedies before invoking this Court's original jurisdiction. This Court's original jurisdiction extends to "all civil actions or proceedings . . . [a]gainst the Commonwealth government." 42 Pa. C.S. § 761. A party, however, must first exhaust its administrative remedies before invoking this Court's jurisdiction in challenging a final agency adjudication. *See Canonsburg Gen. Hosp. v. Dep't of Health*, 422 A.2d 141, 144 (Pa. 1980). The courts must refrain from exercising equity jurisdiction when there exists an adequate statutory remedy. *Arsenal Coal Co. v. Dep't of Envtl. Res.*, 477 A.2d 1333, 1338 (Pa. 1984); *Funk v. Cmwlth.*, 71 A.3d 1097, 1101 (Pa. Cmwlth. 2012).

The doctrine of exhaustion of administrative remedies is intended to prevent the premature interruption of the administrative process, which would restrict the agency's opportunity to develop an adequate factual record, limit the agency in the exercise of its expertise, and impede the development of a cohesive body of law in that area. *See Empire Sanitary Landfill, Inc. v. Dep't of Envtl. Res.*, 684 A.2d 1047, 1053 (Pa. 1996). "The doctrine operates as a restraint on the exercise of a court's equitable powers and a recognition of the legislature's direction to comply with statutorily-prescribed remedies." *Id.*

9

In objecting on these grounds, the Department cites to this Court's recent *en banc* decision in *Keystone ReLeaf LLC v. Pennsylvania Department of Health*, __ A.3d __ (Pa. Cmwlth., No. 399 M.D. 2017, filed April 20, 2018) (*en banc*), wherein we sustained preliminary objections in a situation nearly identical both factually and procedurally to the instant matter. In *Keystone ReLeaf*, a business (Keystone ReLeaf) that applied for a grower/processor permit appealed the Department's denial of its application and concurrently brought an action in this Court's original jurisdiction against the Department and those entities to whom the Department awarded permits. Keystone ReLeaf alleged that the Department violated due process by failing to afford Keystone ReLeaf an adequate administrative appeal process and that the Department scored the applications inconsistently and arbitrarily. The Department responded by filing preliminary objections in the nature of a demurrer, arguing that Keystone ReLeaf failed to exhaust its administrative remedies prior to instituting the action. This Court, after an extensive analysis on the availability and adequacy of administrative remedies available to Keystone ReLeaf, sustained the Department's preliminary objections. In so doing, we opined:

> [Keystone ReLeaf]'s challenges regarding the criteria applied to scoring applications in the permitting process fall squarely within the Department's expertise. [Keystone ReLeaf] is asking this Court to prejudge issues that are committed for initial resolution to an administrative forum. Because the issues involve the Department's expertise, such challenges must be brought before the Department before resorting to judicial review.
>
> Although [Keystone ReLeaf] filed administrative appeals from its denials, [Keystone ReLeaf] has not meaningfully participated in the administrative appeal process. During the pendency of its administrative appeals, [Keystone ReLeaf] filed its original jurisdiction action in this Court. [Keystone ReLeaf] diverted course because it fears it will

10

not get the answers that it seeks regarding the scoring or an opportunity to prove that the permitting process was invalid. However, having failed to go through the administrative appeal process, [Keystone ReLeaf]'s allegations regarding the process are speculative at best. The appropriate way to advance [Keystone ReLeaf]'s arguments in this regard is to actually participate in the administrative appeal process, examine the Department's exhibits and cross-examine the witnesses who will testify about the permitting process, including the evaluation and scoring of permit applications. If the Department refuses to provide information, such matters are appropriate to raise to this Court on appeal. By not participating in the administrative appeal process in a meaningful way, there is no basis upon which this Court can conclude that the process is wholly inadequate.

*Keystone ReLeaf*, __ A.3d at __, slip op. at 9 (internal citations omitted). This Court concluded that because Keystone ReLeaf's administrative appeal was ongoing, judicial intervention would be premature and inappropriate. *Id.*, __ A.3d at __, slip op. at 10. Further, we determined that the current administrative appeal process "offers unsuccessful applicants an adequate remedy to challenge their permit denials and the permitting process." *Id.*, __ A.3d at __, slip op. at 10.

In an attempt to distinguish *Keystone ReLeaf* from the instant matter, Elemental argues that *Keystone ReLeaf* involved a challenge to the permitting process, whereas Elemental challenges "a flawed administrative process that protects a company that has false answers on its permit application to the point of insulating their [sic] conduct from review." (Elemental's Br. in Opposition to Terrapin's Preliminary Objections at 5.) We reject Elemental's argument.

At its core, Elemental's complaint is indistinguishable from that in *Keystone ReLeaf* insofar as it is merely an attempt by a disappointed applicant to seek judicial intervention prior to exhausting its administrative remedies. Elemental's attempt at characterizing the administrative process as flawed is an

11

inference unwarranted from the facts of this case. Elemental, akin to the jilted applicant in *Keystone ReLeaf*, has not meaningfully participated in the administrative process. While Elemental alleges that the administrative appeal process will not provide it with the relief it seeks, this Court has already concluded that the appeal process is "not inadequate" at this stage of the proceedings. *Id.*, __ A.3d at __, slip op. at 9. Accordingly, the proper manner for Elemental to advance its argument is to "participate in the administrative appeal process, examine the Department's exhibits[,] and cross-examine the witnesses who will testify about the permitting process, including the evaluation and scoring of permit applications. If the Department refuses to provide information, such matters are appropriate to raise to this Court on appeal." *Id.*, __ A.3d at __, slip op. at 9. The time to invoke this Court's jurisdiction to seek such relief is after the conclusion of the administrative appeal process, not before.

Just as in *Keystone ReLeaf*, this Court finds itself concerned regarding the troubling allegations cast by Elemental, particularly those that, if true, might later prove to have unreasonably hindered Elemental's ability to develop fully a record to support its challenge to its non-selection. We nonetheless conclude that judicial intervention is unnecessary until such a time that Elemental has exhausted its avenues of administrative relief. We do not trivialize Elemental's concerns. Rather, we merely conclude that this is neither the proper moment nor is our original jurisdiction the proper forum to determine the merits of Elemental's complaint, as there exists no compelling reason to distinguish the instant matter from *Keystone ReLeaf*.

12

Accordingly, Respondents' preliminary objections relating to Elemental's failure to exhaust administrative remedies are sustained, Elemental's preliminary objection is dismissed as moot, and Elemental's Petition is dismissed.[8]

_____
P. KEVIN BROBSON, Judge

---

[8] Because we dispose of the Petition on these grounds, we need not address the Department's preliminary objections relating to the applicable statute of limitations and Elemental's alleged improper use of mandamus.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Elemental Health Group, LLC,           :
                            Petitioner           :
                                                  :
                    v.           :    No. 3 M.D. 2018
                                                    :
Department of Health and Terrapin           :
Investment Fund 1, LLC,           :
                            Respondents           :

# O R D E R

AND NOW, this 29th day of June, 2018, the preliminary objections of the Commonwealth of Pennsylvania, Department of Health and Terrapin Investment Fund 1, LLC, relating to Elemental Health Group, LLC's (Elemental) failure to exhaust administrative remedies, are SUSTAINED. The preliminary objection of Elemental is DISMISSED AS MOOT, and Elemental's Petition for Review in the Nature of a Complaint in Equity Seeking Mandamus or Declaratory Relief is DISMISSED.

                                                          

                                        P. KEVIN BROBSON, Judge