# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| J.B., | : | **CASE SEALED** |
| Petitioner | : | |
| | : | |
| v. | : | No. 644 M.D. 2018 |
| | : | Submitted: November 19, 2021 |
| Pennsylvania State Police, | : | |
| Respondent | : | |

BEFORE:   HONORABLE MARY HANNAH LEAVITT, Judge[1]
HONORABLE ELLEN CEISLER, Judge
HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION
BY JUDGE LEAVITT                    FILED:  March 25, 2022

Before the Court in our original jurisdiction is the preliminary objection of the Pennsylvania State Police that demurs to J.B.'s petition for review seeking declaratory and injunctive relief.  J.B. contends, *inter alia*, that the registration and reporting requirements under the Sexual Offender Registration and Notification Act[2] (SORNA II) are punitive as applied to him in violation of the *ex post facto* clauses of the United States and Pennsylvania Constitutions.[3]  J.B. requests that this Court grant an injunction to terminate his sexual offender registration under SORNA II.

---

[1] This matter was assigned to the panel before January 3, 2022, when President Judge Emerita Leavitt became a senior judge on the Court.

[2] Act of February 21, 2018, P.L. 27 (Act 10), 42 Pa. C.S.§§9799.10-9799.75, *as amended* by the Act of June 12, 2018, P.L. 140 (Act 29).

[3] The United States Constitution provides, in pertinent part, that "[n]o ... ex post facto Law shall be passed." U.S. CONST. art. I, §9.  The Pennsylvania Constitution likewise provides, in pertinent part, "[n]o *ex post facto* law ... shall be passed." PA. CONST. art. I, §17.  "[T]he *ex post facto* clauses of both constitutions are virtually identical, and the standards applied to determine an *ex post facto* violation are comparable."  *Evans v. Pennsylvania Board of Probation and Parole*, 820 A.2d 904, 909 (Pa. Cmwlth. 2003) (citing *Commonwealth v. Young*, 637 A.2d 1313, 1317 n.7 (Pa. 1993)).

We sustain the State Police's preliminary objection and dismiss J.B.'s petition for review.

**Petition for Review**

On October 11, 2018, J.B. filed a petition for review, which averred the following. On November 23, 1998, J.B. was convicted of involuntary deviate sexual intercourse and aggravated indecent assault. The sexual offender registration statute in effect at the time required him to register for a period of 10 years. In 2000, the General Assembly amended the statute and increased the period of registration for convictions for aggravated indecent assault and involuntary deviate sexual intercourse from 10 years to life. On March 2, 2001, upon his release, J.B. was registered as a sexual offender. Petition ¶6, Exhibit A. In 2004, the General Assembly created a passive notification scheme and mandated all registrants to publish their information on a website maintained by the State Police. On December 20, 2012, the Sexual Offender Registration and Notification Act (SORNA I), 42 Pa. C.S. §§9799.10-9799.41, went into effect, which was later declared unconstitutional as an *ex post facto* law by the Pennsylvania Supreme Court in *Commonwealth v. Muniz*, 164 A.3d 1189 (Pa. 2017). In 2018, the General Assembly enacted SORNA II.

In his petition for review, J.B. seeks relief on three counts. In Count I, J.B. asserts that SORNA II contains similar passive notification provisions that were found punitive under *Muniz* and are made applicable to sexual offenders who were not subject to these requirements at the time of their convictions. J.B. argues that SORNA II is unconstitutional as applied to him. Petition ¶¶19-21. In Count II, J.B. contends that his 10-year registration term ended on March 2, 2011. Petition ¶23. In Count III, J.B. argues that SORNA II creates an irrebuttable presumption of "life-

2

long dangerousness," and the "public nature of the registry and the internet site maintained by the [State Police]" impinges upon his constitutionally protected reputation. Petition ¶¶27-28. J.B. requests that this Court declare SORNA II unconstitutional as applied to him; relieve him from the registration and reporting requirements; and issue a writ of mandamus directing the State Police to remove his records from the sex offender registry.

In response, the State Police filed a preliminary objection in the nature of a demurrer, asserting that SORNA II cured the constitutional defects found in SORNA I. SORNA II is not punitive. The State Police contends that SORNA II does not harm J.B.'s reputation because his prior convictions are public information available on the Unified Judicial System website.

**SORNA History**

We begin with a review of Pennsylvania's sex offender registration laws. Beginning in 1995, the General Assembly enacted a series of statutes requiring convicted sex offenders living within the Commonwealth to register with the State Police for varying periods of time. The first of these statutes was commonly known as Megan's Law, *formerly* 42 Pa. C.S. §§9791-9799.6. In 2000, the General Assembly enacted what is commonly referred to as Megan's Law II, *formerly* 42 Pa. C.S. §§9791-9799.7. In 2004, Megan's Law II was succeeded by Megan's Law III, *formerly* 42 Pa. C.S. §§9791-9799.9, which remained in effect until 2012. SORNA I, 42 Pa. C.S. §§9799.10-9799.41, was enacted on December 20, 2011, to replace Megan's Law III, and it went into effect on December 20, 2012.

SORNA I was enacted, *inter alia*, to "comply with [federal law] and to further protect the safety and general welfare of the citizens of this Commonwealth by providing for increased regulation of sexual offenders, specifically as that

3

regulation relates to the registration of sexual offenders and community notification about sexual offenders." *Taylor v. Pennsylvania State Police*, 132 A.3d 590, 595 (Pa. Cmwlth. 2016) (quoting *former* 42 Pa. C.S. §9799.11). SORNA I established, for the first time, a three-tier classification system for sexual offenders. The sex "offender's tier status [wa]s determined by the offense committed and impact[ed] the length of time an offender [wa]s required to register and the severity of punishment should an offender fail to register or provide false registration information." *Taylor*, 132 A.3d at 595 (citing *former* 42 Pa. C.S. §9799.15).

SORNA I increased the length of registration for many offenders; required quarterly in-person reporting; and placed personal information about the registrant, such as his home address and place of employment, on the internet. In *Muniz*, 164 A.3d 1189,[4] our Supreme Court held SORNA I to be unconstitutional because these provisions were punitive and violated the constitutional prohibition against *ex post facto* laws.

Following the Supreme Court's decision in *Muniz*, the General Assembly enacted SORNA II, which has two subchapters. Relevant here is Subchapter I, which applies to individuals who are:

> (1) convicted of a sexually violent offense committed on or after April 22, 1996, but before December 20, 2012,

---

[4] In *Muniz*, the petitioner had been convicted of two counts of indecent assault against a minor less than 13 years of age. At the time of his conviction, Megan's Law III required registration with the State Police for 10 years following the petitioner's release from incarceration. However, the petitioner absconded before sentencing. By the time he was apprehended and sentenced, SORNA I was in effect. Under SORNA I's new classification system, the petitioner was subject to lifetime registration. The petitioner challenged SORNA I as unconstitutional because it retroactively increased the length of his registration and notification requirements. The Pennsylvania Supreme Court held that the retroactive application of SORNA I's new tier system was an unconstitutional *ex post facto* law, to the extent that it imposed a lifetime registration requirement that was not applicable when the petitioner committed his crimes.

whose period of registration with the Pennsylvania State Police, as described in section 9799.55 (relating to registration), has not expired; or

(2) required to register with the Pennsylvania State Police under a former sexual offender registration law of this Commonwealth on or after April 22, 1996, but before December 20, 2012, whose period of registration has not expired.

42 Pa. C.S. §9799.52. The General Assembly declared its intent that the statute "shall not be construed as punitive." 42 Pa. C.S. §9799.51(b)(2).

In this new statutory scheme, the General Assembly removed a number of crimes from the list of triggering offenses and reduced the frequency with which an offender must report in person to the State Police. Those convicted of one of the triggering offenses must register either for a period of ten years or for life. 42 Pa. C.S. §9799.55(a), (b). Individuals convicted of rape, involuntary deviate sexual intercourse, sexual assault, aggravated indecent assault, and incest with a child under the age of 12 are subject to lifetime registration. 42 Pa. C.S. §9799.55(b). Offenders must report in person once a year at an approved facility to verify their residence and be photographed; sexually violent predators[5] must report in person four times per

---

[5] Section 9799.53 of SORNA II defines "sexually violent predator" as

[s]ubject to section 9799.75 (relating to construction of subchapter), a person who has been convicted of a sexually violent offense and who is determined to be a sexually violent predator under section 9799.58 (relating to assessments) due to a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses or who has ever been determined by a court to have a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses under a former sexual offender registration law of this Commonwealth. The term includes an individual determined to be a sexually violent predator where the determination occurred in the United States or one of its territories or possessions, another state, the District of Columbia, the Commonwealth of Puerto Rico, a foreign nation or by court martial.

year.  42 Pa. C.S. §§9799.60(a), (b), 9799.54(b).  Offenders must also contact the State Police within three days of any change to their registration information, including changes to residence, employment, or education.  Generally, failure to comply with the registration requirements results in a felony prosecution.  42 Pa. C.S. §9799.60(e); 18 Pa. C.S. §4915.2(b), (c).

Subchapter I also establishes a website to be operated in conjunction with the statewide registry.  The website publishes information about each registered offender including name and known aliases; year of birth; residence; the location of any schools attended by the offender; employment location; a photograph updated yearly; a physical description of the offender; the license plate number and a description of any vehicle owned or registered to the offender; a status report regarding whether the offender is compliant with SORNA; an indication of whether the offender's victim was a minor; a description of the offense committed by the offender; the dates of the offense and conviction; and the location of the offender's temporary shelter and whether the offender receives mail, if the offender is homeless.  42 Pa. C.S. §9799.63(c).

A lifetime registrant may petition with the sentencing court to be removed from the statewide registry if at least 25 years have elapsed prior to filing the petition, "during which time the petitioner has not been convicted in this Commonwealth or any other jurisdiction or foreign country of an offense punishable by imprisonment of more than one year, or the petitioner's release from custody following the petitioner's most recent conviction for an offense, whichever is later." 42 Pa. C.S. §9799.59(a)(1).  The lifetime registrant must demonstrate by clear and

---

42 Pa. C.S. §9799.53.

convincing evidence that he no longer poses a risk, or a threat of risk, to the public or any individual person. 42 Pa. C.S. §9799.59(a)(5).

**Analysis**

In ruling on a demurrer, the court must accept as true all well-pleaded allegations in the petition for review and all inferences reasonably deduced therefrom. *Pennsylvania Medical Providers Association v. Foster*, 582 A.2d 888, 892 (Pa. Cmwlth. 1990). We will sustain a demurrer only when it appears with certainty that the law permits no recovery if the facts are as pleaded. *Id.* Further, in considering preliminary objections to a petition for review, the court is not bound by legal conclusions, unwarranted inferences from facts, argumentative allegations, or expressions of opinion encompassed in the petition for review. *Armstrong County Memorial Hospital v. Department of Public Welfare*, 67 A.3d 160, 170 (Pa. Cmwlth. 2013).

In Count I, J.B. seeks relief on the grounds that Subchapter I of SORNA II is punitive. This issue has been decided by our Supreme Court's recent decision in *Commonwealth v. Lacombe*, 234 A.3d 602 (Pa. 2020). In that case, two sex offenders, Lacombe and Witmayer, petitioned to terminate their sexual offender registration requirements, asserting that the retroactive application of Subchapter I of SORNA II to them was punitive and constituted an *ex post facto* violation. As with J.B., Lacombe was convicted of involuntary deviate sexual intercourse in 1997, and subject to a 10-year registration under the then-applicable version of Megan's Law. After he was released from prison in 2005, he was made subject to the lifetime registration requirement of SORNA II. The Supreme Court held that Subchapter I of SORNA II is nonpunitive and does not violate the *ex post facto* laws. In doing so, the Supreme Court explained that,

7

> [i]n response to *Muniz* ... the General Assembly enacted Subchapter I, the retroactive application of which became the operative version of SORNA for those sexual offenders whose crimes occurred between April 22, 1996[,] and December 20, 2012. In this new statutory scheme, the General Assembly, *inter alia*, eliminated a number of crimes that previously triggered application of SORNA and reduced the frequency with which an offender must report in person to the [State Police]. With regard to Subchapter I, the General Assembly declared its intent that the statute "shall not be considered as punitive." 42 Pa. C.S. §9799.51(b)(2).

*Lacombe*, 234 A.3d at 615.

The Supreme Court then explained that, in enacting SORNA II, "the General Assembly made a number of material changes to the operation of SORNA [I]" in order "[t]o achieve its dual goals of ensuring public safety without creating another unconstitutionally punitive scheme." *Id.* Among other things, pursuant to Subchapter I of SORNA II, and unlike SORNA I, a lifetime registrant may petition a court to be removed from the statewide registry by demonstrating with "clear and convincing evidence that he or she no longer poses a risk, or a threat of risk, to the public or any individual person." *Id.* at 616-17.

The Supreme Court then proceeded to discuss each of the factors enumerated in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963),[6] to determine

---

[6] In *Mendoza-Martinez,* the Supreme Court identified the following factors for considering whether a law is punitive in effect:

> (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the traditional aims of punishment, that is, retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned.

372 U.S. at 168-69.

whether Subchapter I of SORNA II was punitive in effect. In balancing these factors, our Supreme Court reasoned:

> As the above *Mendoza-Martinez* analysis clearly reflects, Subchapter I effected significant changes from the original version of SORNA, retroactive application of which we found unconstitutional in *Muniz*. To summarize, we find three of the five factors weigh in favor of finding Subchapter I nonpunitive. Additionally, we give little weight to the fact Subchapter I promotes the traditional aims of punishment and give significant weight to the fact Subchapter I is narrowly tailored to its nonpunitive purpose of protecting the public. As we have not found the requisite "clearest proof" Subchapter I is punitive, we may not "override legislative intent and transform what has been denominated a civil remedy into a criminal penalty[.]"

*Lacombe*, 234 A.3d at 626.

In light of *Lacombe*, we must reject J.B.'s claim that Subchapter I of SORNA II is punitive. *See also R.H. v. Pennsylvania State Police* (Pa. Cmwlth., No. 699 M.D. 2018, filed January 12, 2021) (unreported), and *R.F.M. v. Pennsylvania State Police* (Pa. Cmwlth., No. 495 M.D. 2019, filed October 4, 2021) (unreported) (holding that under *Lacombe*, Subchapter I of SORNA II did not violate the *ex post facto* laws because Subchapter I is not punitive in nature).[7]

In Count II, J.B. asserts that his 10-year registration term ended on March 2, 2011, and because Megan's Law II was succeeded by Megan's Law III, which was found unconstitutional, there was no valid registration law applicable to him at the time SORNA II took effect. This claim likewise has no merit.

---

[7] An unreported panel decision of this Court, "issued after January 15, 2008," may be cited "for its persuasive value[.]" Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

In 2013, the Pennsylvania Supreme Court struck down Megan's Law III for violating the single subject rule of Article III, Section 3 of the Pennsylvania Constitution, PA. CONST. art. III, §3. *Commonwealth v. Neiman*, 84 A.3d 603, 616 (Pa. 2013). By the time Megan's Law III was struck down, it had been replaced by SORNA I. J.B. does not dispute that he was required to register as a sex offender under Megan's Law III. Thus, he was subject to its replacement, *i.e.*, SORNA I.

In Count III, J.B. argues that Subchapter I sets forth an irrebuttable presumption that he poses a high risk of danger to the public, and the sex offender registry and the internet site maintained by the State Police infringed on his right to protect his personal reputation.

Section 9799.51(a) of Subchapter I of SORNA II provides, in pertinent part, as follows:

> (a) Legislative findings.--It is hereby determined and declared as a matter of legislative finding:
>
> * * *
>
> (2) These sexually violent predators and offenders pose a high risk of engaging in further offenses even after being released from incarceration or commitments, and protection of the public from this type of offender is a paramount governmental interest.

42 Pa. C.S. §9799.51. J.B. argues that Subchapter I violated his due process rights by an improper irrebuttable presumption.

> The irrebuttable presumption doctrine
>
> derives from a series of United States Supreme Court cases in the 1970s involving statutes that infringed upon protected interests or denied benefits by utilizing presumptions that the existence of one fact was statutorily conclusive of the truth of another fact.

10

> *The High Court concluded that, absent a meaningful opportunity to contest the validity of the second fact, the statutory irrebuttable presumptions deprived the citizenry of due process of law.*

*In re J.B.*, 107 A.3d 1, 14 (Pa. 2014) (emphasis added). In reviewing a due process claim raised under the irrebuttable presumption doctrine, the Supreme Court has expounded the following three-element analysis: (1) whether petitioners have asserted an interest protected by the due process clause that is encroached by an irrebuttable presumption; (2) whether the presumption is not universally true; and (3) whether a reasonable alternative means exists for ascertaining the presumed fact. *J.B.*, 107 A.3d at 15-16.

In *R.C. v. Evanchick* (Pa. Cmwlth., No. 223 M.D. 2019, filed March 17, 2021) (unreported), this Court considered preliminary objections filed by the commissioner of the State Police to an amended petition for review filed by a sexual offender. The offender asserted in his petition that SORNA II created an irrebuttable presumption that sexual offenders posed a high risk of recidivism, which violated procedural and substantive due process and infringed on the offender's right to reputation. This Court overruled the preliminary objections and ordered the State Police to file an answer to the petition. In doing so, we relied upon the Supreme Court's decision in *Commonwealth v. Torsilieri*, 232 A.3d 567 (Pa. 2020), in which the Supreme Court considered whether Subchapter H of SORNA II, 42 Pa. C.S. §§9799.10-9799.42, established an unconstitutional irrebuttable presumption[8] that offenders subject to its requirements pose a high risk of recidivism. The Supreme Court remanded the matter for an evidentiary hearing on whether there is a scientific

---

[8] Subchapter H of SORNA II contains a similar legislative finding that "[s]exual offenders pose a high risk of committing additional sexual offenses and protection of the public from this type of offender is a paramount governmental interest." 42 Pa. C.S. §9799.11(a).

11

consensus sufficient to justify overturning the legislative determination concerning sexual offenders' likelihood of reoffending. *Torsilieri*, 232 A.3d at 587-88.

We held in *R.C.* that where a petitioner raises a colorable due process claim under the irrebuttable presumption doctrine, the petitioner "must be given the opportunity to present evidence in an effort to rebut the legislative finding with respect to an adult sexual offender's recidivation rates and the effectiveness of a tier-based registration and notification system." *R.C.*, slip op. at 18. The offender in *R.C.* averred, *inter alia*, that most registrants pose no higher risk of future criminal conduct than people not on the sex offender registry; that the registry fails to achieve its purpose of protecting the public; and that the registry makes the residents of the Commonwealth less safe. The offender further averred that there is overwhelming empirical evidence that relatively few people present a high risk of recidivism and, in fact, most present almost no risk after a period of 15 years from the date of the crime. *Id.* at 20. We held that the offender's averments, if accepted as true, stated "a colorable claim as to the scientific consensus regarding [SORNA II's] irrebuttable presumption," and the offender "should be given the opportunity to prove his contentions through scientific studies or comparable evidence that would satisfy this element of the analysis." *Id.* at 21-22.

By contrast, here, J.B.'s petition for review averred, in conclusory fashion, that "[t]he registration statutes do not give offenders the opportunity to challenge this presumption before they are automatically subject to the registration provisions," and the "public nature of the registry and the internet site maintained by the [State Police] harms a registrant's reputation." Petition ¶¶26, 28. The petition made no averments that the presumption established in Section 9799.51(a) of Subchapter I of SORNA II "is not universally true" or that "a reasonable alternative

12

means exists for ascertaining the presumed fact." *J.B*., 107 A.3d at 15-16. As such, J.B. does not state a due process claim upon which relief could be granted. We are not bound by legal conclusions, unwarranted inferences from facts, argumentative allegations, or expressions of opinion encompassed in the petition for review. *Armstrong County Memorial Hospital*, 67 A.3d at 170.

## Conclusion

For the foregoing reasons, we conclude that J.B.'s petition for review has failed to state a claim upon which relief could be granted. We thus sustain the State Police's preliminary objection in the nature of a demurrer and dismiss J.B.'s petition for review.

_____
MARY HANNAH LEAVITT, President Judge Emerita

13

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| J.B., | : | **CASE SEALED** |
| Petitioner | : | |
| | : | |
| v. | : | No. 644 M.D. 2018 |
| | : | |
| Pennsylvania State Police, | : | |
| Respondent | : | |

# **O R D E R**

AND NOW, this 25th day of March, 2022, the preliminary objection of the Pennsylvania State Police is SUSTAINED. The petition for review filed by J.B. is DISMISSED with prejudice.

_____
MARY HANNAH LEAVITT, President Judge Emerita